318 So.2d 742

**Fred Wayne KENT**

v.

**STATE.**

**6 Div. 771.**

Court of Criminal Appeals of Alabama.

Aug. 19, 1975.

———◆———

Anthony M. Falletta, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and David L. Weathers, Asst. Atty. Gen., Birmingham, for the State.

HARRIS, Judge.

Kent was convicted of robbery and sentenced to ten years in the penitentiary. He was represented at arraignment by a court-appointed lawyer and entered a plea of not guilty. He was represented at trial by another lawyer. After conviction he was declared to be indigent and a free transcript was furnished him and new counsel was appointed to represent him on appeal.

Around seven o'clock on the night of February 2, 1973, the A & P Store in Irondale, Jefferson County, Alabama, was robbed of seventeen to eighteen hundred dollars by three Negroes, each armed with a sawed-off shotgun.

Mr. Michael W. Eiseman testified that he was Assistant Manager on the night of the robbery and was in the office balancing the receipts and money taken in on that date. In the store at the time the robbers entered were the store manager, Mr. Oscar Clow, a part-time boy, Marshall Nichols, and a young couple by the name of Mr. and Mrs. Shields.

Mr. Eiseman testified that two of the Negroes walked in the office where he was balancing the money and that the big man, Deandre Poe, asked him where the money was and he was going to show him that the money was in the safe which was open at the time. Evidently he didn't respond as fast as Poe thought he should have and Poe struck him in the side with the shotgun. Poe then told him to go down to the ground floor where the third gunman had huddled the manager, part-time employee, and Mr. and Mrs. Shields in a group. As he was leaving the office, he saw Poe and the other Negro getting the money from the safe.

When Mr. Eiseman got to the ground floor, the third Negro had the shotgun pointed at the head of the part-time employee. This gunman ordered all of them to go to the back room and lie on the floor. When they got to the back room, Mrs. Shields was slow in getting on the floor and Mr. Shields turned around and the gunman hit him over the head with the shotgun, breaking the gun. After being struck Mr. Shields fell to the floor. This Negro was subsequently identified as appellant. Appellant stayed in the back room about thirty seconds and during this time he threw a metal float weighing about 30 pounds on top of him and he then pulled the door to and left.

Mr. Eiseman stated the robbery lasted from five to eight minutes and during this time he observed the robber for at least four minutes. After appellant left he got up and went to the office telephone and called the police and gave them a description of the robbers. He told them the large man was about six feet two inches tall, weighed about 230 to 235 pounds, with broad face and big cheeks and real thick lips; that he had a wide nose and a very deep voice. The large man was in the office with him. He did not get a good look at the other man in the office but he was tall and skinny. He stated that the man down by the cash register was about six feet tall and weighed about 180 pounds. That he had on wire-rimmed glasses, wore a small mustache and his hair was braided.

Marshall Nichols testified that he was 18 years of age and was employed by A & P. He stated that he was in the store when three black males came in with shotguns. He said he knew one of the black men and that his name was Deandre Poe. That he had seen him on several occasions prior to the night of the robbery. He further testified that when the three robbers entered the store, he was sacking groceries. They were running when they came in the store and one man grabbed him by the arms and told him not to look at him. That this man kept the shotgun pointed at his head.

He stated that he got a side glance at this man and he had on glasses and his hair was braided. He said the men were in the store about eight to ten minutes, and that he gave the police a description of the man holding the gun on him and the way his hair was fixed and the kind of glasses he was wearing.

Mr. Eiseman made a positive in-court identification and said he could not be mistaken that Kent was one of the three robbers and the one that stayed at the cash register while Poe and the other man robbed the safe in the office.

Appellant did not testify but offered one witness in support of his alibi. This witness testified that he saw Kent on two occasions on February 2, 1973, at the Municipal Airport; that he first saw him between 4:30 and 5:00 p. m. and again at seven o'clock.

There was no motion for a new trial; there was no request for the affirmative charge; there were no exceptions reserved to the oral charge of the court to the jury; but there was a motion to exclude the state's evidence. This motion was overruled.

There is only one issue submitted on this appeal and that is the insufficiency of the evidence to establish appellant's guilt. This claim is based on the fact that the state produced only *one* witness who could identify appellant as one of the participants in the robbery.

In this jurisprudence we do not travel on the numerical number of witnesses.

This identical question was squarely presented and precisely answered in the case of *Bray v. State,* 47 Ala.App. 308, 253 So.2d 531, where the late and lamented Presiding Judge Price, writing for a unanimous court, said:

"The testimony of the victim, if believed to the required degree, is sufficient to sustain a conviction of robbery. To sus-

tain such a charge it is not necessary that the stolen property be in actual physical contact with the person of the victim, but it is sufficient if the property is taken from his presence or personal protection. *Cobern v. State,* 273 Ala. 547, 142 So.2d 869. Further, in an indictment for robbery, ownership of stolen property is properly laid in the party in possession, either as owner conditional, or bailee, or agent. *Howell v. State,* 26 Ala.App. 612, 164 So. 764."

In *Smith v. State,* 53 Ala.App. 27, 296 So.2d 925, we said:

"A fact may be established as firmly by the testimony of one witness as by the testimony of an entire community."

There is no reversible error in the record and the judgment of conviction is affirmed.

Affirmed.

All the Judges concur, except CATES, P. J., not sitting.